We have four argued cases this morning. The first one is number 17, 2331, Joy v. Treasury. Mr. Bregman. Thank you, Mr. Connolly. It's my pleasure. I'd like to start off. Good morning, Your Honors. May it please the Court. I have the honor of representing Corporal Eileen Joy in this case, who, as you know, was terminated from the Bureau of Engraving and Printing. I wanted to point out that this case, at its core, boils down to an issue that occurs every day in every courthouse, every trial courthouse in this country, in every docket. A police officer is making an accusation against a defendant, whether it be for a traffic violation, parking ticket, or a serious crime, and the defendant is disputing the allegations. In this particular case, the officer, my client, Corporal Joy, who had been working for the Bureau of Engraving and Printing for 16 years. Well, the problem with that scenario is that the fact-finding tribunal makes a finding of fact. Yes. Which in this case is reviewed for substantial evidence. Agreed. And your problem is showing us that there is not substantial evidence to support the finding. Absolutely, and I think the board's decision is interesting in that it recites the case law and then, I think, unfairly tries to shoehorn the facts into the case law, especially with respect to credibility issues because we're dealing with a false statement charge. But that's my point, is that we're dealing with a situation where an officer makes a reasonable determination that there's been a security violation, and just because the MSPB judge didn't feel that she took the appropriate action at that moment, therefore is indicative of her untruthfulness. In other words, she sees a violation, she reacts a certain way, and the point that I think your Honor is getting to is that when it comes to substantial evidence, the board ignored two critical pieces of evidence and never even considered them. How do you know that the board never considered them? You think the board didn't consider them because it wasn't expressly addressed in the opinion? Yes, and I'm aware – yes, Your Honor, that's correct. But I feel that with all the other – and I agree that the case law doesn't require the board to spell out every last thought and every last piece of evidence. Could you say what the two things that you felt were critical just so I know exactly what they were? And that person, that corporal recalled my client mentioning something about a person with a camera. So that was corroborating – critical corroborating testimony. If the argument is my client's, out of whole cloth, making up this security violation that Ms. Rivera-Pagan did not have a camera, she's completely made it up, then why would she also have the advanced thought to be able to tell a colleague who's nearby, I just dealt with somebody with a camera. So that was the first piece. And the second – and that was a stipulation. So that's why I believe – I think it got forgotten because that was dealt with at the pretrial phase, and the judge excluded that witness and said, look, we'll just agree to a stipulation, and that stipulated that. Stipulated as to what the witness would testify. Exactly. And exactly what I just said, that he remembered some discussion of my client speaking about an employee with a – And did you say, even with the stipulation, we think it's important for Corporal Nelson to get on the stand so that we can explore how your client didn't seem – I don't know, like she was making stuff up when she said this to me or something about surrounding circumstances? Or was – did you object to the exclusion of the witness? I did. I mean, it was my position that the witness – during pretrial that the witness should be allowed to testify, but the resolution that the judge came up with I think just said, I'm going to exclude this witness, but I'm going to allow for stipulation. And in other words, I think she turned to the government and said, do you agree that this is what he would – Corporal Nelson would say? Yes. Okay. Well, she settled. We don't need to hear from Corporal Nelson. Or did you object to – in your briefs on appeal, do you object to the witness not being called in person? I honestly can't recall if I objected on that telephonic – that was a telephonic pretrial conference, but I did – it was my position that the corporal should be called. But even if that was – because I don't believe that was – Is that an issue on appeal? No, it's not one of the issues I raised, but I did note that I felt that the court improperly made – created this situation where I'm going to exclude your witness. I'm going to allow for stipulation. The stipulation was noted, and it was in the pretrial conference report. But then we don't – it's almost as though – and I know this is a long way around the barn to let the cows out, as the saying goes. But my point is, is that the – then the decision is that she's lying, but it mentions nothing. And I understand your honor's issue with that is – with my argument, that being that because Corporal Nelson was never mentioned again, that I feel that the board did in fact ignore it. And what was the second? The second issue was Corporal Vandegrift, and this is even a bigger issue because this witness did testify and testified, I think, very credibly. And there was no credibility determination by the board as to that she was not credible or that she had contradictory testimony or some reason not to acknowledge or consider this particular witness. This witness, again, corroborated my client's testimony, albeit on a different incident where she testified that she also had encountered Ms. Rivera Pagan. On a different occasion with a camera, and there was some discussion back and forth about that camera. So even if the board said for some reason that my – Corporal Vandegrift is not credible, it would have been incumbent upon the – I think upon the board to say that. Because otherwise you have these two critical pieces of evidence that directly corroborate what my client is saying. What was the timeframe of the earlier incident with the camera? A few months. Two months? A few months. It was several months. It was like within six months. But – A few months earlier. Yes. So in other words, it directly corroborated the – my client's – and the fact – and I will also say there was a third piece. It was discussed in – at the trial that my client sought direction from her superiors even prior to taking any official police action. So this is an officer who's not hard-charging to get Ms. Rivera Pagan, who she didn't even know. And the evidence was she's never even met before, never knew, had no reason between them to have a dispute. And yet, Ms. – and we have this – we have the evidence on the record that my client contacted several times her supervisors, which is known as CPOC. It's like the communications center. And a Corporal Cook, who is basically the communications oversight, and said, what should I do? This is what I think happened. Do I – remind me, did the administrative judge here say anything about a suggested motive to fabricate this event or his motive? No, no suggested – no. And there was no such evidence put forth on the record at all. I think the only thing the judge was saying is that she felt that there was – I suppose there was an inference just in full candor that I think the judge said that she felt maybe that Corporal Joy felt that she had been – Insulted? Insulted in some very – but in an instant because the – because of the fact that Ms. Rivera Pagan came to her with her bag very quickly, threw it on there, and search it. And then there was that moment where I think the judge is inferring that because of that, I'm going to risk my entire 16-year career in law enforcement at this agency where I search bags every day. People are rushing, coming in, coming out. I have people who feel they're too good to be searched, people who feel that they don't need to be searched, high-ranking, low-ranking, everybody in the middle, former police, former military, former dignitaries. Whatever the case may be, they come to this building, and she's used to dealing with them. And all of a sudden the judge is saying, I think you felt snubbed, and as a result, you're going to dishonorably fabricate an entire situation. Isn't there some support for that in the video? No, it's actually quite the opposite because the agency's – I'm glad you brought that up, Your Honor, and I know I'm in rebuttal time. The agency's theory from the ground up was that the – that Ms. – that Purple Joy had essentially felt snubbed because that Ms. Rivera Pagan snatched the bag back. But actually the judge felt that there was no snatching of the bag either way and instead focused on a different issue, which was this hurried movements and the fact that Ms. Rivera Pagan kept her hand over top of the bag while it was being searched. Which kind of could suggest that your client was expressing frustration or sort of expressing by laughter that she thought that the person going through the metal detector was behaving badly. Yes, she referred to it as the look of surprise, the leaning back with the gesture that the judge referred to in the decision. With this looking back and open mouth issue. But my client testified she never disputed that. She said it was a look of realization. Now I understand why you were acting this way. She says, I get it. You were trying to conceal the fact that you had a camera. But it's only a security violation. It's not like a weapon or a bomb or some other kind of destructive device. It's a security violation that needs to be dealt with, and it would be handled by a supervisor. And no one gets fired over it. It's not theft. It's not a crime. It's just a security issue. It's like leaving a door unlocked or leaving a door – sticking a book inside of a door. You're not supposed to do that. You're supposed to let things be secure. They get a security violation. Everybody knows in the building. The administrative judge could conclude that her explanation about her reaction at the security point was not accurate. Correct? Could. Is that a rational connection to make that if somebody expresses surprise that I'm going to reach into their brain and say, you know what, I don't think you were telling the truth. I think you weren't just realizing that the person was doing this. I'm thinking that you are acting angry with that and, ah, I'm going to get you now. And I'm going to – it's not a rational connection. One of the problems I'm having is that we have to look at whether there is substantial evidence to support the findings made by the administrative judge, which include findings that Ms. Rivera-Pagan testified credibly and that she had no reason to deny having a camera if she had one, and that she didn't have a camera. And then you have the contrary statements of your client that she did have a camera, that she snatched her purse, these things that seem to be in opposition. So the question is, one of the charges was candor, right? And the other one was, what was it, false testimony? False testimony, yes. So what do we do with that? I mean, because you've got a pretty difficult burden of proof here of showing that the administrative judge's findings were unreasonable. Yes, I think the issue comes down to whether the judge's decision was arbitrary, capricious, or an abuse of discretion. I agree that substantial evidence may be even harder, but I think it's not unfair to say that when you have this information before you and you have this decision that just accepts one version over the other and makes these leaps that I think we just discussed that are really not rationally based and not fair. You could come to that conclusion, but is that something that we could reasonably say? If I go like that, it means I'm going to concoct a setup and conspiracy to find you guilty of a crime or a security violation that you didn't commit? Or can this reaction be something that makes sense, which is what my client had testified about, which is that she felt, now I get it, I understand what happened, and I'm going to deal with it when she gets back. And I'm also going to double check. So we're dealing with whether the standard being whether the judge abused her discretion or acted in an arbitrary, capricious manner when she basically wholesale accepted the government's viewpoint on this case, seemingly ignoring or discounting or not considering or not weighing the evidence, the very significant evidence that corroborated my client's testimony. And then in a case where there really is no way to tell, we have no conclusive evidence in this case. No one's changed their story. There's no smoking gun. But there's not a requirement of conclusive evidence. I agree, but that's my whole point, is that there may not be a requirement, but that doesn't necessarily give the MSPB license to say, because like I pointed out at the very beginning, this happens every day. And if this is the standard that we're going to allow, then every situation, time, whether it's an officer who disputes what and a defendant takes a different position, the officer could be up on false statement charges. I believe my time is up. Thank you very much. All right, we'll give you two minutes for rebuttal. I'm sorry, Your Honor? We'll give you two minutes for rebuttal. Understood. Thank you very kindly. Ms. Bay, is that how you pronounce it? Yes, Your Honor. May it please the Court. The MSPB's decision upholding the agency's removal of Ms. Joy from her position was supported by substantial evidence and not arbitrary or capricious. As such, it should be affirmed. Mr. Bregman just now stated that the administrative judge's decision essentially came down to accepting one version over another, presumably meaning the agency's version and Ms. Rivera-Pagan's version over Ms. Joy's. However, what Mr. Bregman says actually goes to the heart of the administrative judge's role in assessing credibility of the witnesses and making a credibility determination, which is virtually unrevealable by this Court. Mr. Bregman makes much of the fact that the administrative judge failed to consider certain exculpatory evidence. However, as we demonstrated in our brief, just because the administrative judge did not discuss every single piece of evidence in her decision, it does not mean she did not consider them. And in this case, the administrative judge actually specifically said in her decision that she considered all the evidence on the record. Right, so there are two kind of propositions of law that together have to be, have a bearing on insufficiency of agency explanation. The fact that something isn't mentioned is obviously not by itself a reason to overturn an agency decision. On the other hand, an agency does actually have to give reasons, including reasons for factual findings on substantial evidence of the record as a whole. And so there can be instances in which there seem to be unexplained aspects of the evidence that seem important enough that they should have been addressed. Why is this not one of those? This is not one of those because, for one, Mr. Bregman's, one of the key points that Mr. Bregman makes is the testimony of Corporal Vandergriff. However, the testimony of- This is about the months earlier instance of a camera in the purse? Yes, Your Honor, Corporal Vandergriff's testimony. I believe Corporal Vandergriff worked at BEP and was a good friend of Ms. Joy's. However, the administrative judge held an eight-hour or more hearing, hearing live testimony from multiple witnesses, which included Corporal Vandergriff, and so had the opportunity to assess Corporal Vandergriff's testimony live and assess Corporal Vandergriff's own credibility and demeanor. And there's no reason to think, especially given that she said she considered all the evidence, that she did not consider Corporal Vandergriff's testimony. Where do we find the Vandergriff testimony in the record, in the appendix? The Vandergriff testimony is in the record. I believe she starts testifying at approximately page 618, or appendix 618 or so, and there are excerpts of her testimony contained in the hearing transcript and as part of the joint appendix. Why is it that- I heard your answer was that there was an eight-hour hearing and the judge heard this testimony, but I didn't hear an answer to the question of, why didn't the judge have to explain that this testimony was not convincing or didn't corroborate Ms. Joy's testimony? The administrative judge did not specifically discuss Corporal Vandergriff's testimony. However, she did discuss a good deal of evidence that was on the record and at the hearing in front of her, and she concluded that the preponderance of the evidence established an overwhelming case for Ms. Joy's removal, and that Ms. Joy's story was essentially internally inconsistent, inconsistent with the video, and inherently improbable. And upon such findings, she determined that Ms. Joy had made a false statement to the agency with the intent to deceive them. Is it your point that there's obvious problems with the testimony that was presented, and that's why the administrative judge didn't have to address it? I mean, or you can't- you're not sure what the administrative judge thought? Yeah, I can't- of course, I cannot look into exactly what the administrative judge was thinking when she decided- when she determined not to address Corporal Vandergriff's testimony specifically, but again, there's no indication that she did not consider such testimony, especially given that Corporal Vandergriff testified right in front of her, and the evidence still presented an overwhelming case in favor of her determination that Ms. Joy made a false statement and lacked candor during the agency proceedings, and she did go into a good amount of detail of the various reasons why Ms. Joy's story did not make sense and led her to believe that Ms. Joy was making a false statement. The two key things that she discussed were the video footage, and that Ms. Joy's account was simply inconsistent with that footage, and that Ms. Rivera-Pagan knew what the camera policy was at the agency, and essentially that Ms. Rivera-Pagan had no reason to lie about having a camera in her bag. Can you answer the question I asked your friend on the other side? Where exactly does the administrative judge say something suggestive of a motive on Ms. Joy's part to make this up? I don't believe that the administrative judge did say anything suggesting a motive on Ms. Joy's part. As far as we can tell on the record, we don't know why Ms. Joy acted the way she did or why she made this up, but the evidence still overwhelmingly suggests that she did make this up and that she did not see a camera in Ms. Rivera-Pagan's purse. So there's nothing in the HA's decision about insult or snubbing or feeling disrespected or anything like that? At least speaking for myself, I read the events here and there's a kind of mystery about what happened here and why people were acting the way they did, which seems to have some bearing on a charge of fabrication, deliberate lying about something. Your Honor, there is nothing in the administrative judge's decision that speaks to the direct motive of Ms. Joy in doing what she did. The administrative judge does address the interaction between Ms. Rivera-Pagan and Ms. Joy during the security screening and states that Ms. Joy may have perceived Ms. Rivera-Pagan to be angrily stomping and acting rudely. However, the administrative judge decided that the video footage did not support Ms. Joy's account of those events. And even if we don't know Ms. Joy's exact motive in... But doesn't that, I guess, doesn't that at least, doesn't that deepen the mystery? That is, if it turns out that there wasn't even behavior at the scene that might suggest a motive, then aren't we even deeper in the mystery of what kind of motive would there be for Ms. Joy to make this up? Well, first of all, the administrative judge does state that Ms. Pagan does appear to be in a very typical hurry. And there was evidence in the record suggesting that Ms. Rivera-Pagan may have been a little bit hasty or rude with Ms. Joy. However, there's nothing to suggest that the specific reason why Ms. Joy targeted Ms. Rivera-Pagan. And we agree with you, it is a mystery as to why... Now I'm confused. Are you saying that the administrative judge did find that there was evidence that Ms. Joy found the behavior rude? No, Your Honor. What I was saying regarding the administrative judge's decision was that she cited Ms. Joy's contention that Ms. Rivera-Pagan appeared to be angrily stomping and snatching the bag back from her. However, the administrative judge actually disagreed with Ms. Joy's finding on those points. Wasn't that really not going to motive? It was going to whether Ms. Joy's account was true or not. Yes, Your Honor. It's not really fair to infer a motive from that, is it? No, I agree with Your Honor that it doesn't specifically go to motive. Is there anything in the record on motive at all? There might be some inferences in the agency's response, but not in the specific evidence on the record as to the motive. But we agree that we don't know exactly why Ms. Joy did what she did, but the evidence still overwhelmingly supports the determination that Ms. Joy lacked candor during the investigative process and that she made a false statement knowing it was false, either with the intent to deceive or at the very least with reckless disregard for the truth. I think I'm probably just repeating myself, but in the absence of any finding about motive, what is the basis for saying that she made this up? The basis for saying that Ms. Joy made a false statement was not one specific... I'm sorry. Made up means false and deliberately, intentionally false. Yes, Your Honor. We agree that the standard is that she had to deliberately have made the statement with intent to deceive or at least with a reckless disregard for the truth. And the evidence as a whole that the administrative judge cites supports this. First of all, there is the fact that Ms. Rivera Pagan had no reason to lie. And second of all, there is the fact that Ms. Joy's story was internally inconsistent, even throughout the entire process of the interaction with Ms. Pagan and through the investigative process and the hearing in front of the administrative judge. And finally, the administrative judge simply found that Ms. Joy's account of what happened was inherently improbable based on her testimony, Ms. Rivera Pagan's testimony and the video evidence. And taking all that evidence into account, decided that Ms. Joy's story was simply not believable. And based on preponderant evidence, the MSPB upheld Ms. Joy's termination. Moreover, both the agency and the MSPB determined that either the false statement charge or the lack of candor charge standing on their own would have been enough to remove Ms. Joy from her position. And the lack of candor charge, which was also upheld by the administrative judge, has different standards than the false statement and only requires that the agency must prove that the appellant gave incorrect or incomplete information and did so knowingly. And the administrative judge stated that based on many of the same reasons, including the video footage and the credibility of the witnesses, that Ms. Joy lacked candor in providing her statements to the investigator during the investigative process. So I'm still having trouble understanding what difference on the facts of this case there is between these two charges. Either she made this up or she didn't make it up. Yes, Your Honor. And the evidence overwhelmingly supports a finding that Ms. Joy did make up the statement that Ms. Rivera Pagan had a camera in her bag. As I said, the video footage does not support Ms. Joy's account of the testimony. And there is, again, the fact that Ms. Rivera Pagan knew that she was allowed to bring a camera into the facility. Therefore, even if she had a camera, there would have been no reason for her to obfuscate it or put it in the bushes during her break. And that's one thing that I hadn't discussed yet, which is that Ms. Joy alleges that she saw a camera in Ms. Rivera Pagan's bag as she was exiting the building. However, even though Ms. Joy thought that was a security violation, she did and said nothing at the time. However, further, it's undisputed that Ms. Rivera Pagan returned only 10 to 15 minutes later after getting lunch and came back through that same security station with Ms. Joy. And Ms. Joy concedes that at this point, Ms. Rivera Pagan did not have a camera. And, however, again, even though Ms. Joy states that she saw a camera on Ms. Rivera Pagan's way out, she did not say anything either on the way out or when Ms. Rivera Pagan came back in purportedly without a camera. And this version of events simply does not make sense, given that Ms. Joy was under the impression that having such a camera constituted a security violation and that Ms. Rivera Pagan knew that cameras were allowed and therefore had no reason to go hide a camera on her lunch break. And does the record make clear that Ms. Joy did not know about the change of the policy, even though Ms. Rivera Pagan did know? The record is clear that Ms. Rivera Pagan did know about the change in policy. I'm really interested in the first half. Ms. Joy's testimony is that she did not know about the change in the policy. I don't know that there's any extrinsic evidence that she did not know, but we have no reason to think that she— I believe that Ms. Joy testified during the administrative hearing that she was undecided what to do at that moment. I think the answer to the question is the video doesn't show a lot of people waiting behind her to go out. No, no, it doesn't. And again, Ms. Joy stated that she was indecisive about what to do and that in hindsight she should have stopped Ms. Rivera Pagan. But the fact that she didn't and the fact that she didn't say anything to Ms. Rivera Pagan on the way back in, again, supports the agency's and the MSPB's determination that Ms. Joy was not telling the truth, and she knew she was not telling the truth when she asserted multiple times on official records that Ms. Rivera Pagan had a camera in her bag. What are we to make of the testimony and the finding about the testimony where Ms. Joy testified that there was stomping and her testimony about the laughter, which the administrative judge specifically disbelieved her statements about both of those, finding that they were not credible? To what extent does that bear on the finding of false statements? It supports the administrative judge's finding of a false statement because it, again, shows that Ms. Joy's story was not consistent with the video footage, which the administrative judge reviewed both at the hearing and perhaps when she was issuing her decision. The administrative judge found that the video evidence did not support Ms. Joy's characterization of the incident and that based on Ms. Joy's testimony at the hearing, that she did not find Ms. Joy's explanation for the laughter to be credible. And therefore, it again supports the MSPB's determination that Ms. Joy was making a false statement. So there were two documents that were identified as being documents where there were false statements made. One was a Form 9090, and then the other one was an incident report that was prepared after the Form 9090 was prepared. I can't find that incident report in the appendix. Is there a reason why I can't find it? I believe the only reason why you wouldn't be able to find it is because I don't think either we overlooked it when we were putting together the joint appendix or we did not cite specifically to that page. However, if Your Honor wishes, I would, of course, be willing to file a supplement to the appendix. It was on the record below, and it was in our proposed joint appendix. It just did not make it into the final appendix. But as I said, if Your Honor wishes, I would file a supplement to the appendix. Why don't you submit a copy of that? Excuse me? Why don't you submit a copy of that without argument, just a copy of the document? Okay. For these reasons, we respectfully request that the report be released. Okay, we're out of time. Thank you. Thank you kindly again, Your Honors, for this opportunity. 16 years in law enforcement and with an honorable military background. And my client goes and has a lawyer from the general counsel's office who's relatively new to the agency and who she doesn't have any connections with whatsoever. No reason to fabricate. Apparently, the administrative judge did find that she fabricated something else, which is her testimony about the stomping and her other testimony about the incident concerning the laughter. My response to that when I wrote it down was, I hope you can watch the video again and see that that is not a rationale. Once again, that's where the problem I have with the judge's opinion and why I feel it's arbitrary, capricious, or abuse of discretion to say that you don't see – first of all, you can't hear anything. There's no audio, so you don't hear any noise. Secondly, it only shows Ms. Rivera-Pagan coming into the frame at one point. The point is that we have a finding by the administrative judge that she misstated the existence of stomping at the checkpoint and that her explanation as to why she laughed was not credible. But you can always make – is that really – does that entitle the decision to any deference because that decision – that's no more than any other person's opinion. It's not even a – that's why I keep using the term is it rationally based. It's the judge saying, I don't find any stomping. Well, of course, you're not going to see what Ms. Joy saw, which is her coming down the hallway, hearing what's coming down the hallway. And even if she misperceived – and we all have been in this situation where we recall an event differently than the way we – than other people do. I felt this person was angry. I didn't think they were angry. I think they were surprised. What about this? I mean – Yes, Your Honor. It's not just the video here, and I understand what you're saying about the video. I watched it. But there's also testimony from another witness as well who is deemed to be credible and whose account of the events was deemed to be credible and who justified that she didn't angrily stop. So it's not just the video, right? Right. It's a video. The video, I almost feel, is essentially – it's not a tiebreaker. The video is the video. And then you have two people giving their reasonable impressions about what they felt was going on and why they did what they did. It doesn't then connect. That goes to that mystery point that I think was raised earlier is then you say, well, then – because there's – that's my point earlier as well, that there's no smoking gun to be a tiebreaker. And then essentially what the judge is doing is making – I feel an abuse of the discretion to say I'm going to go with this attorney who apparently had some knowledge about the procedures and therefore wouldn't have any motivation to lie. But on the other hand, I have an officer who also doesn't have a motivation to lie. I think that's the problem here. Is that – was that – those discretionary decisions, were they proper? And that, I think, goes to the heart of our concerns here because, again, you would have – any situation that we deal with for police officers every day would be under scrutiny with this type of evaluation. And it depends on who they're dealing with. I think we're about out of time. I am. Yes. Okay. Thank you. Thank you all very much. Thank you.